IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Craig C., )
on behalf of Deborah C., deceased, )
 )
    *Plaintiff*, )
 ) Case No. 17 CV 50269
v. )
 ) Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting )
Commissioner of Social Security, )
 )
    *Defendant*. )

## **MEMORANDUM OPINION AND ORDER**

Craig C., on behalf of his deceased wife Deborah C., brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying social security disability benefits. For the reasons set forth below, the decision is remanded.

### **I. BACKGROUND**[1]

On October 19, 2012, Plaintiff[2] injured her back while working as an operations team leader at Target. R. 291, 373. Plaintiff complained of back and right leg pain and was diagnosed with disc herniation and lumbar radiculopathy.[3] R. 291-92. In April 2013, Plaintiff underwent a lumbar microdiscectomy.[4] R. 296, 302. In

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.
[2] Deborah C. died on April 10, 2017. Her husband, Craig C. is pursuing this appeal on her behalf. The Court will refer to Deborah C. as Plaintiff throughout this opinion.
[3] Radiculopathy is a disorder of the spinal nerve roots. STEDMAN'S MEDICAL DICTIONARY 1622 (28th ed. 2006).
[4] A microdiscectomy is a surgery to remove lumbar herniated disc material that is pressing on a nerve root or the spinal cord. *Discectomy or Microdiscectomy for a Lumbar Herniated*

the months following surgery, Plaintiff's low back pain had initially improved, but she continued to suffer from pain in her right leg. R. 296-97. In August 2013, Plaintiff's low back pain returned, and she reported that it was worse than her pre-surgery status. R. 297. Plaintiff's orthopedic surgeon, Dr. Avi Bernstein, reported that a recent MRI did not identify recurrent disc herniation, but there were degenerative disc changes. R. 297. He recommended an epidural steroid injection and physical therapy. R. 297.

In November 2013, Plaintiff was referred to a pain specialist, who administered sacroiliac joint[5] injections. R. 308. After one day of relief, Plaintiff reported that her pain had returned. R. 326. Despite injections and two months of physical therapy, Plaintiff continued to report pain. R. 318, 323.

On April 18, 2014, Plaintiff filed an application for disability insurance benefits. R. 74, 183. Plaintiff alleged a disability beginning on January 18, 2013, because of her lumbar spine, right lower extremity, chronic pain, nerve damage, chronic fatigue, depression and hypertension. R. 200, 204. Plaintiff stopped working on her alleged onset date due to these impairments. R. 204.

On March 15, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). R. 41-73. Plaintiff was then 58 years old and had worked at Target for 15 years before her injury. R. 48. Plaintiff testified that she did not get much relief from her back surgery in 2013. R. 57. She continued

---

*Disc*, UW HEALTH, https://www.uwhealth.org/health/topic/surgicaldetail/discectomy-or-microdiscectomy-for-a-herniated-disc/hw218424.html (last visited Mar. 6, 2019).
[5] The sacroiliac joint refers to the area between the hip bone and pelvis. *See* STEDMAN'S MEDICAL DICTIONARY 1015, 1714 (28th ed. 2006).

to have a constant pain in her lower back.  R. 57.  Plaintiff took Norco three times per day to reduce her pain, but it did not make her pain free.  R. 59.

Plaintiff testified that she could not stand, sit or walk for long periods of time.  R. 51.  Plaintiff preferred to lay on the couch but standing caused her less pain than sitting.  R. 55.  Plaintiff could sit approximately 30 minutes before she needed to stand up.  R. 55.  Plaintiff could stand 10 to 15 minutes in one spot before she would need to move around.  R. 56.  Plaintiff could lift a maximum of 10 pounds.  R. 57.  However, her doctors limited her to lifting 20 pounds when she was doing physical therapy.  R. 61-62.

Plaintiff could walk around the block but took breaks.  R. 54-55.  Plaintiff could drive a car for short distances, but she mostly did crossword puzzles and watched television.  R. 51, 53-54.  Plaintiff did light housework but would lay down between tasks.  R. 53, 58.

Plaintiff testified that she was depressed, lonely and was isolated since moving to Florida in 2015.  R. 51, 54.  Plaintiff did not take medication for her depression or seek mental health treatment because she "just deal[s] with it" and was mostly lonely.  R. 53-54, 61.

The ALJ also heard testimony from Jill Radke, a vocational expert ("VE"), who categorized Plaintiff's past work as a stock clerk, DOT 299.367-014 (heavy), or a retail manager, DOT 185.167-046 (light).  R. 65.  The ALJ did not call an impartial medical expert and ultimately denied Plaintiff's request for benefits.  R. 20-34.  The ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the

- 3 -

lumbar spine with right sided sciatica and peripheral neuropathy. R. 22. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 26. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. R. 27.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover,

federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

### III. DISCUSSION

On appeal, Plaintiff argues that the ALJ failed to support the RFC with substantial evidence, erroneously discredited her allegations about her symptoms and should have found her mental impairments severe. The Court agrees that the RFC is not supported by substantial evidence because the ALJ discounted Plaintiff's allegations of pain without an adequate explanation and did not properly explain the weight she afforded the medical opinion evidence. This has left the Court uncertain of the basis for the ALJ's RFC determination.

A claimant's RFC is the maximum work that she can perform despite any limitations and is based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 U.S. Dist. LEXIS 12962, at *40 (N.D. Ill. Feb. 2, 2012).

The ALJ determined that Plaintiff had the RFC to perform light work with additional postural limitations and "a sit/stand option allowing her to sit or stand alternatively to shift positions or stretch, such that she [was] not off task more than 10% of the work period." R. 27. In formulating the RFC, the ALJ's overall

assessment was that "lumbar surgery helped claimant's back pain, although she continues to have right leg pain." R. 30. Accordingly, we can assume the ALJ discredited some of Plaintiff's complaints relating to back pain when formulating the RFC. But the ALJ's decision is less than clear on this point.

As Plaintiff points out, the ALJ analysis is contradictory. Only a few lines apart, the ALJ states Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms *are not entirely consistent* with the medical and other evidence of record for the reasons explained in this decision" and "I find claimant's alleged symptoms and limitations *are generally consistent* with the medical evidence of record." R. 30 (emphasis added). There are only two sentences separating these conflicting statements. This is troubling.

The Commissioner never directly addresses this conflict, but she seems to argue that despite the use of boilerplate language, the ALJ's overall analysis was adequately explained. Defendant's Response at 11-12, Dkt. 18. The Court's primary concern is not with the use of boilerplate language, but that it directly contradicts the ALJ's subsequent statement. Moreover, the information following the ALJ's statement that Plaintiff's symptoms were "generally consistent" provides no insight. It consists of mostly a recitation of the medical records with conclusory statements and an unsubstantiated determination that Plaintiff can perform light work. *See* R. 30; *see Chuk v. Colvin*, No. 14 C 2525, 2015 U.S. Dist. LEXIS 147626, at \*25 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same

thing as analyzing it, in order to build a logical bridge from evidence to conclusion.").

The Court agrees with the Commissioner that an ALJ need not specify every statement that the ALJ found not credible. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). The problem in this case is that the decision is unclear as to what the ALJ's credibility determination was, let alone whether the record supported that finding. *Cf. Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (finding that although the ALJ did not specify which of the plaintiff's statements were incredible, "the record provides adequate support for the ALJ's credibility finding").

Assuming the ALJ meant to discredit Plaintiff's complaints of back pain, she provided inadequate support for her determination. For example, the ALJ stated that Plaintiff "reports that pain in the back is better," but offers no citation to support this finding. R. 30. After surgery, Plaintiff initially reported an improvement in her back pain. But the medical records from August 2013 and later revealed Plaintiff's struggle with back pain and allegations that her pain was worse than it was before her surgery. Injections and physical therapy were also ineffective in reducing Plaintiff's pain.

The ALJ pointed to the "fairly wide range of activity" Plaintiff could do despite her pain. R. 32. However, Plaintiff's reported activities, which included crossword puzzles, light housework and grocery shopping, did not necessary

contradict Plaintiff's complaints of pain, especially when she accomplished her tasks with frequent breaks due to pain. R. 53, 58.

The ALJ also cited to a February 2016 treatment note where Plaintiff reported "constant back pain" but reasonable relief from pain medication. R. 30. Again, assuming the ALJ cited the February 2016 record to show that Plaintiff's back pain had improved, the records do no reveal improvement to the extent the ALJ claims. In December 2015, Plaintiff reported a pain level of 7/10 and her doctor started her on new pain medication, in addition to Norco, and suggested additional injections and epidurals to further reduce her pain level and radiculopathy. R. 409-11. Plaintiff was also diagnosed with post-laminectomy syndrome.[6] R. 410. In February 2016, Plaintiff similarly reported a pain level of 6/10, even with the use of Norco, with pain limiting her "ability to perform activities of daily life." R. 401. Without the ALJ's evaluation of these contradictory records, the Court questions the ALJ's conclusion that Plaintiff's "pain has improved and [is] well maintained on Norco." R. 32.

Even if the ALJ meant to credit some of Plaintiff's allegations about her disabling symptoms, it is unclear how the ALJ determined Plaintiff's specific limitations in the RFC. The ALJ afforded only "some weight" to the state-agency reviewing physicians' opinions that Plaintiff could perform light work. R. 31. These physicians were the only medical sources to provide a function by function

---

[6] Post-laminectomy syndrome describes persistent pain after spinal surgery. *Ask the Expert: Post-Laminectomy Syndrome*, HSS THE PLAYBOOK, https://www.hss.edu/playbook/ask-the-expert-post-laminectomy-syndrome/ (last visited Mar. 6, 2019).

- 8 -

assessment of Plaintiff's limitations.[7]  The ALJ provided no explanation for the weight she afforded other than noting that the physicians considered Plaintiff's back pain when assessing postural limitations.  R. 31.  However, the ALJ did not address the fact that the state-agency physicians focused on Plaintiff's normal range of motion and strength, without acknowledging that Plaintiff's examinations often showed normal range of motion despite complaints of severe pain.  *See* R. 111-12, 317, 371-72.

Furthermore, in adopting the light work restriction, the ALJ failed to evaluate Plaintiff's testimony that she could lift only 10 pounds, but that her doctor limited her to 20 pounds during physical therapy.  R. 28.  The ALJ only mentioned the contradiction in her recitation of the medical evidence with a citation to a July 2014 report where Plaintiff also reported she could lift 10-20 pounds.  R. 28, 218.  We must assume the ALJ discredited Plaintiff's testimony that she could lift only 10 pounds because otherwise she would have been limited to sedentary work.  But the lack of explanation leaves the Court wondering if the ALJ considered more recent records, which could have made her 20-pound weight limit in February 2014 and July 2014 outdated.  R. 410.

The ALJ also determined that a sit/stand option would accommodate Plaintiff's reported limitations.  In formulating this limitation, the ALJ gave "great weight" to the August 2013 opinion of Plaintiff's treater, Dr. Bernstein, that Plaintiff "could perform light duty work activity."  R. 30-31.  However, Dr.

---

[7] The state-agency examining physician gave no opinion as to Plaintiff's physical limitations, other than noting Plaintiff could walk 50 feet without support.  *See* R. 344-47.

Bernstein's determination provided no explanation for what he considered to be "light duty work" and was part of a treatment note that consisted of only nine sentences. R. 297. The extent of the ALJ's evaluation was equally brief. The ALJ gave the opinion great weight because "it was given more than four months after surgery and after reviewing claimant's post-surgery MRI, which did not show significant issues. Later, claimant's EMG performed on January 4, 2016, confirmed no active radiculopathy, but mild peripheral neuropathy." R. 31.

First, it is unclear exactly what portion of the opinion informed the RFC because Dr. Bernstein gave no indication what he meant by "light duty work activity" and did not offer any opinion on a sit/stand option or whether it would be sufficient to allow Plaintiff to maintain full-time employment. R. 30, 297. Even if, as the Commissioner claims, the ALJ considered Plaintiff's testimony and treatment records before concluding that the RFC was "in line" with Dr. Bernstein's opinion, there is no way for the ALJ to make this determination when Dr. Bernstein provided no explanation for how Plaintiff was physically limited.

There is evidence in the record that Plaintiff was previously on a "light duty work" restriction shortly after her accident, but she was specifically limited to lifting no more than 10 pounds. R. 290. Under the regulations, this would be considered sedentary work. *See* SSR 96-9p, 1996 SSR LEXIS 6, *8 ("The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time."). Therefore, Dr. Bernstein may have thought Plaintiff could return to the type of work she was performing only seven months earlier. If this

were the case, Dr. Bernstein's opinion would be inconsistent with the RFC. Accordingly, the ALJ should have investigated this opinion before relying on it to support her RFC. *See* SSR 96-5p, 1996 SSR LEXIS 2, at *13 ("Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms.").

The Commissioner argues the ALJ appropriately considered Dr. Bernstein's opinion, noting that Plaintiff made no attempt to claim that her treaters, in restricting her to light duty work, "meant anything other than that she could perform some type of full time competitive work." Defendant's Response at 9, Dkt. 18. This may be true but pursuing full time sedentary work instead of light work would greatly affect the disability determination in this case.[8]

Second, and even more troubling, is that the ALJ did not mention the remainder of Dr. Bernstein's treatment note, which referenced Plaintiff's continued low back pain, degenerative disc changes, and Dr. Bernstein's recommendation for an epidural injection and physical therapy. R. 297. The ALJ also failed to acknowledge that Plaintiff's joint injections and physical therapy provided no pain relief. The ALJ gave no indication whether she reviewed the counter-evidence and rejected it, or completely overlooked it. This discussion should have been part of the ALJ's evaluation of regulatory factors used to weigh Dr. Bernstein's opinion. *See* 20 C.F.R. § 404.1527(c)(2).[9] Although the ALJ listed the regulatory factors that she

---

[8] The Commissioner does not dispute Plaintiff's assertion that the grids mandate a finding of disability if Plaintiff is limited to sedentary work.
[9] These factors include: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of

- 11 -

claims to have considered, there was no indication she applied them when weighing Dr. Bernstein's opinion and failed to mention controlling weight entirely.[10] R. 31.

At most, the ALJ determined that Dr. Bernstein's opinion was supported by a post-surgery MRI and an EMG that post-dated the opinion. However, the ALJ stated that the MRI "did not show significant issues" even though Dr. Bernstein determined there were degenerative disc changes. R. 297. Additionally, the EMG, which was taken two and a half years after Dr. Bernstein's opinion, was never evaluated by a physician and related only to Plaintiff's lower extremity. R. 408; *see Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."). This leaves the Court, and the ALJ, unable to determine whether the EMG findings of no active radiculopathy but mild peripheral neuropathy in her lower extremity supported Dr. Bernstein's opinion and the ALJ's decision regarding her back. *See Lambert*, 896 F.3d at 774 ("[N]o medical source opined that the imaging results were inconsistent with Lambert's complaints of disabling pain. Indeed, throughout Lambert's treatment history, medical imaging ruled out specific,

---

the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

[10] The treating-physician rule, which was recently modified, still applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527. An ALJ must give controlling weight to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. If the ALJ does not afford controlling weight, the ALJ must set forth "good reasons" for assigning it lesser weight. *See Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). If the ALJ declines to afford controlling weight, she must consider various factors to determine how much weight to give the opinion. *See* 20 C.F.R. § 404.1527(c)(2).

objective causes of his ongoing pain—yet his doctors performed surgeries, prescribed powerful pain medications, and recommended long-term pain-management techniques for his suite of chronic back problems."). And even if the imaging supported Dr. Bernstein's opinion, this would not shortcut the discussion of Plaintiff's pain. *See Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) (finding that objective evidence of the plaintiff's pain included the use of prescription pain medication, epidural injections, surgeries, and physical therapy and "[t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence").

Because the Court is unsure whether the ALJ considered all the evidence in the record, a remand is required so that the ALJ can provide an adequate explanation of why she determined Plaintiff could perform light duty work. In doing so, the ALJ should clarify her credibility determination and properly discuss the weight given to all the medical opinions in the record.

Lastly, Plaintiff challenges the ALJ's determination that her mental impairments were non-severe. "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." Here, the ALJ determined that Plaintiff had a severe physical impairment, and Plaintiff does not argue that any limitations related to her mental impairments were excluded from the RFC. *Ray v. Berryhill*, No. 18-2229, 2019 U.S. App. LEXIS 4161 (7th Cir. Feb. 12, 2019). Moreover, at the hearing, Plaintiff's counsel admitted Plaintiff was seeking benefits "primarily due to physical impairments" and that "it's

the lumbar spine and lower extremity problems that are the most debilitating." R. 43, 45. Therefore, even if the evidence supports a finding that Plaintiff's mental impairments were severe, she has not shown how it would have changed the disability determination.

Nevertheless, because this case is being remanded for a new RFC determination, the ALJ should provide a more detailed assessment of the state-agency examining physicians' opinions relating to mental impairments. The ALJ should also address evidence that in December 2015 Plaintiff reported depression and her doctor prescribed Cymbalta for her pain, but also to "hopefully help with mood." R. 410-11. This evidence does not directly undermine the ALJ's determination that Plaintiff had no psychological problems in February 2016, but it should be addressed in the decision.

## IV. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [11] is granted, and the Commissioner's motion [18] is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: March 6, 2019    By: _____
                           Iain D. Johnston
                           United States Magistrate Judge